**EXHIBIT A**
**Settlement Agreement**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : |
| CALNSHIRE ESTATES, LLC, | : Case No. 17-14457-elf |
| Debtor. | : Chapter 7 |
| BONNIE B. FINKEL, ESQUIRE, in her capacity as Chapter 7 Trustee for Calnshire Estates, LLC, | : |
| Plaintiff, | : |
| v. | : Adv. No. 19-00138-elf |
| PRUDENTIAL SAVINGS BANK, | : |
| Defendant. | : |
| In re: | : |
| STEEPLE RUN, L.P., | : Case No. 17-14458-elf |
| Debtor. | : Chapter 7 |
| BONNIE B. FINKEL, ESQUIRE, in her capacity as Chapter 7 Trustee for Steeple Run, L.P., | : |
| Plaintiff, | : |
| v. | : |
| PRUDENTIAL SAVINGS BANK, | : Adv. No. 19-00139-elf |
| Defendant. | : |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Settlement") is made as of the 7th day of December 2020, by and between Bonnie B. Finkel (the "Trustee"), individually and as

4833-5206-5487

Chapter 7 Trustee of the bankruptcy estates of Calnshire Estates, LLC and Steeple Run, L.P. on the one hand, and Prudential Bank ("Prudential") on the other (the Trustee and Prudential are hereinafter collectively referred to as the "Parties"):

WHEREAS, Calnshire Estates, LLC (herein referred to as "Calnshire") and Steeple Run, L.P. (herein referred to as "Steeple," and together with Calnshire as the "Debtors") are among a number of affiliated companies owned and/or controlled by Renato Gualtieri ("Gualtieri"); and

WHEREAS, Steeple was formed in 2002 and in 2008 acquired certain real property consisting of twenty-one (21) acres of unimproved raw land located at East Paletown Road, Richland Township, Pennsylvania (the "Steeple Run Property"); and

WHEREAS, on November 20, 2008, Steeple entered into a Land Loan Agreement with Prudential, pursuant to which Prudential issued a loan to Steeple and Gualtieri under a promissory note of the same date (the "Steeple Note") for a loan in the principal amount of Three Million Nine Hundred Eleven Thousand Two Hundred Fifty Dollars ($3,911,250.00) (the "Steeple Loan"); and

WHEREAS, in connection with the Steeple Loan, on or about November 20, 2008, Steeple executed and delivered to Prudential a Mortgage and Security Agreement (the "Steeple Mortgage" along with the Steeple Note, the Steeple Loan any modifications thereto and any other loan documents associated with the Steeple Loan, the "Steeple Loan Documents") in which Steeple pledged the Steeple Run Property as security for the Steeple Loan; and

WHEREAS, the Steeple Mortgage was recorded by the Recorder of Deeds in and for Bucks County, Pennsylvania, on December 22, 2008 at Instrument No. 2008102278; and

WHEREAS, the Steeple Mortgage is valid, enforceable and fully perfected; and

WHEREAS, to date, the Steeple Run Property has remained undeveloped; and

4833-5206-5487                                        2

WHEREAS, Calnshire was formed in 2003 to acquire certain unimproved real property located in West Caln Township, Chester County, Pennsylvania (the "Calnshire Property"), which Gualtieri intended to develop (the "Calnshire Project"); and

WHEREAS, on or about June 21, 2010, Calnshire executed and delivered to Prudential a Collateral Mortgage (the "Calnshire Mortgage") pursuant to which Calnshire pledged the Calnshire Property in connection with a June 21, 2010 Development Construction Loan Agreement (the "Durham Loan Agreement") between Prudential and Durham Manor, LLC ("Durham"), pursuant to which Prudential issued a loan to Durham under a promissory note of the same date (the "Durham Note") for a loan in the principal amount of Five Million One Hundred Thirty-Six Thousand Dollars ($5,136,000) (the "Durham Loan" along with the Calnshire Mortgage, the Durham Loan Agreement, the Durham Note, the Durham Loan and any other loan documents associated with the Durham Loan, the "Durham Loan Documents"). The proceeds of Durham Loan were used, among other things, to pay off a $2 million loan balance owed by Durham to First Horizon Home Loans, a division of First Tennessee Bank National Association ("First Horizon"), and a $1.8 million loan balance owed by Calnshire to Prudential; and

WHEREAS, the Calnshire Mortgage was executed by Gualtieri as Calnshire's sole officer and owner, and recorded by the Recorder of Deeds in and for Chester County, Pennsylvania on November 3, 2011 at Instrument No. 11134276, Book 8282, Page 1492, *et. seq.*; and

WHEREAS, the Durham Loan was modified on or about July 19, 2011, September 20, 2011, September 13, 2012 and September 20, 2013 (along with any and all other modifications of the Durham Loan, (the "Durham Modifications"); and

4833-5206-5487

3

WHEREAS, after defaults under the Durham Loan and the Steeple Loan, and litigation instituted by both Prudential and Debtors' affiliate, Island View Crossing II, L.P. ("Island View"), on June 30, 2017 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"); and

WHEREAS, on or about August 4, 2017, Prudential filed a Motion to Convert the Debtors' bankruptcy cases or appoint a Chapter 11 Trustee (the "Trustee Motion"), and on or about December 18, 2017, the Bankruptcy Court entered an Order converting the Debtors' Chapter 11 bankruptcy cases to cases under Chapter 7 of the Bankruptcy Code; and

WHEREAS, after the filing of the Trustee Motion, but prior to the conversion of the Debtor's cases, on or about October 31, 2017, Prudential filed a motion in each of the Debtors' bankruptcy cases to Designate the Debtors as Single Asset Real Estate Debtors Nunc Pro Tunc to the Petition Date and for Sanctions in the Form of Immediate Stay Relief Pursuant to Section 362(d)(3) of the Bankruptcy Code (the "SARE Motions"); and

WHEREAS, as of the Petition Date, the Debtors Schedules of Assets and Liabilities reflect that there was no equity in the Steeple Property or the Calnshire Property in excess of the secured claims asserted on each of those properties, which claims were scheduled as disputed; and

WHEREAS, on December 20, 2017, the Trustee was appointed as the Chapter 7 Trustee for the Debtors' bankruptcy estates; and

WHEREAS, at the time of the appointment of the Trustee, Prudential alleged no equity in the Steeple Property and alleged no equity in the Calnshire Property in excess of the secured

claims on each of those properties; and

WHEREAS, the Trustee ultimately agreed that the Debtors were Single Asset Real Estate debtors pursuant to the definition contained in Section 101(51B) of the Bankruptcy Code and on April 25, 2018 the Bankruptcy Court, on the consent of the Debtors and Prudential, entered orders granting the SARE Motions in each of the Debtors' bankruptcy cases; and

WHEREAS, on May 1, 2018, Prudential, filed a motion for Relief from the Automatic Stay in each of the Debtors' bankruptcy cases (the "Stay Relief Motions"); and

WHEREAS, on May 17, 2018, the Trustee filed objections to the Stay Relief Motions and

WHEREAS, on February 26, 2019, the Trustee filed an application to employ Mitts Law, LLC ("Mitts") as special counsel and on April 10, 2019, the Bankruptcy Court entered an Order approving the application to employ Mitts; and

WHEREAS, on April 23, 2019, the Trustee agreed to a Consent Order granting Prudential relief from the automatic stay; and

WHEREAS, on June 28, 2019, the Trustee initiated the above-captioned adversary proceedings in the Calnshire bankruptcy case (the "Calnshire Adversary") and the Steeple bankruptcy case (the "Steeple Adversary" or together with the Calnshire Adversary, the "Adversary Proceedings") by filing complaints against Prudential alleging causes of action for breach of contract, tortious interference with actual and prospective contracts, breach of fiduciary duty, equitable subordination ; and as to Calnshire, asserting claims including seeking to have the Calnshire Mortgage declared invalid; and

WHEREAS, on or about August 26, 2019, Prudential filed Motions to Dismiss the complaints filed in the Adversary Proceedings; and

4833-5206-5487 5

WHEREAS, On May 4, 2020, the Court entered Orders (the "Dismissal Orders") granting Prudential's motion to dismiss the Steeple Adversary Complaint, further dismissing Counts II, III, IV and V of the Calnshire Adversary, denying Prudential's Motion to Dismiss as to Count I, and granting the Trustee leave to amend the Complaints; and

WHEREAS, on June 8, 2020, the Trustee filed an amended complaint in both of the Adversary Proceedings (the "Amended Complaints"); and

WHEREAS, on July 15, 2020, Prudential filed Motions to Dismiss the Amended Complaints to which responses, replies and sur-replies were filed; and

WHEREAS, in the course of the Debtors' bankruptcy cases and the Adversary Proceedings, Prudential has asserted in correspondence to the Trustee's counsel that in Prudential's view, the Trustee's filings triggered potential claims against the Trustee and/or the Trustee's counsel, McElroy, Deutsch, Mulvaney & Carpenter, LLP ("MDMC") and/or Mitts, pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure (the "Rules"), Section 105 of the Bankruptcy Code, the Bankruptcy Court's inherent powers and/or 28 U.S.C. § 1927 (the "9011 Notices"); and

WHEREAS, the Trustee and her counsel vigorously dispute the contents of the 9011 Notices and have averred to the contrary that the Trustee's filings and allegations were made in good faith, and that the 9011 Notices contained assertions that were inaccurate; and

WHEREAS, the Trustee ultimately agreed to the terms of a consent order which provided, *inter alia*, for the entry of judgments of foreclosure on both the Calnshire Property and the Steeple Property (the "Consent Order") and on or about July, 24, 2020, the Bankruptcy Court entered an Amended Consent Order; and

WHEREAS, after investigation by the Parties, the exchange of discovery and further

4833-5206-5487

6

discussion, the Trustee, individually and on behalf of the Debtors' bankruptcy estates, and Prudential have determined that the Trustee's claims in the Amended Complaints will be costly and time consuming to litigate and that the expense of expected protracted litigation could likely result in little or no benefit to creditors of the Debtors' bankruptcy estates; and

WHEREAS, after spirited negotiation and in an effort to avoid the costs and uncertainty associated with litigation of the Amended Complaints, and the 9011 Notices and the opposition thereto, the Parties, and each of them, have negotiated and wish to enter into this Settlement; and

**NOW THEREFORE, IN CONSIDERATION OF THE FOREGOING, AND THE MUTUAL PROMISES, AGREEMENTS AND RELEASES CONTAINED HEREINAFTER, AND FOR OTHER GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND ADEQUACY OF WHICH IS HEREBY ACKNOWLEDGED, THE PARTIES, AND EACH OF THEM, INTENDING TO BE LEGALLY BOUND, AND WITHOUT ADMITTING ANY WRONGDOING OR LIABILITY BY ANY PARTY, AGREE AS FOLLOWS:**

1. <u>Recitals</u>. The foregoing recitals are confirmed by the Parties as true and correct and are incorporated herein by reference.

2. <u>Motion to Approve Settlement</u>. The Trustee and Prudential will execute this Agreement within 24 hours of it being approved by their respective parties. Within ten (10) days of the execution and delivery of this Settlement by all Parties (or such other deadline set by the court), the Trustee shall file an omnibus motion with the Bankruptcy Court seeking an order approving this Settlement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Settlement Motion"). This Settlement shall be evidenced and implemented by this Settlement, the Settlement Motion and the "Final Order" approving this Settlement. "Final

Order" shall mean an order entered by the Bankruptcy Court that has become final and non-appealable. The "Settlement Effective Date" is a date upon which the order approving this Settlement becomes a Final Order.

3. <u>Dismissal of Adversary Proceedings with Prejudice</u>. In exchange for the Trustee filing Stipulations of Dismissal with Prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) made applicable to the Adversary Proceedings by Rule 7041, in the Calnshire Adversary and in the Steeple Adversary on or within thirty (30) days of the Settlement Effective Date and the releases set forth in paragraphs 7 through 9 below, Prudential agrees to pay Sixty Thousand Dollars ($60,000.00) to the Trustee on behalf on the Debtors' bankruptcy estates to be apportioned as follows:

    a. Forty Thousand Dollars ($40,000.00) to the Calnshire bankruptcy estate; and

    b. Twenty Thousand Dollars ($20,000.00) to the Steeple bankruptcy estate.

4. <u>Incorporation of Prior Agreements</u>. The Parties ratify and hereby incorporate the following prior agreements and/or Consent Orders between the Parties into this Settlement as if set forth fully herein:

    a. Consent Order Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) dated April 23, 2019 [Calnshire D.N. 174];

    b. Amended Consent Order dated July 24, 2020 [Calnshire D.N. 209];

    c. Consent Order Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) dated April 23, 2019 [Steeple D.N. 170]; and

    d. Consent Order dated July 24, 2020 [Steeple D.N. 202];

In the event of any ambiguity or inconsistency between the Settlement and any of the aforementioned prior agreements and/or Consent Orders, the Settlement shall control.

5. <u>Allowance of Claims</u>. The Trustee acknowledges that the following proofs of claim filed by Prudential in the Debtors' bankruptcy cases are fully Allowed secured claims against the Debtors' real estate to be paid or satisfied from the net proceeds of sheriff's sales of the Debtors' properties, and neither the Trustee, nor any other person or entity on behalf of the Trustee shall take any action to in any way expunge, object to or oppose the Claims (as defined below), either as secured or as to any deficiency claim (as set forth below) in the event that there is any unpaid balance of either Claim after the liquidation of the Calnshire Property or the Steeple Property:

    a. Claim Number 38-1 listed on the Calnshire Bankruptcy Claims Register in the amount of Two Million, Seven Hundred Sixty-Seven Thousand, Eight Hundred forty-four dollars and sixty-seven cents ($2,767,844.67) (the "Calnshire Claim"); and

    b. Claim Number 8-1 listed on the Steeple Bankruptcy Claims Register in the amount of Four Million, Sixty-Nine Thousand, one hundred twenty-four dollars and seventy three Cents ($4,069,124.73) (the "Steeple Claim" or together with the Calnshire Claim, the "Claims").

6. <u>Deficiency Claims</u>. The Parties acknowledge and agree that in the event that the Calnshire Property and/or the Steeple Property are liquidated and the proceeds of the sale of either or both Properties are insufficient to pay the Calnshire Claim in full or the Steeple Claim in full, Prudential shall have a general unsecured deficiency claim for the remaining balance of either Claim, which, to the extent there are funds available for distribution to general unsecured

creditors, shall share in such distribution *pro rata* with any and all other general unsecured claims.

7.  Mutual Releases. Except as set forth in paragraph eight (8) of this Settlement, effective on the Settlement Effective Date, the Parties, and each of them, on behalf of themselves which for purposes of this paragraph 7 means the Trustee both in her individual capacity and on behalf of the bankruptcy estates of Calnshire and Steeple and Prudential (except that Prudential is not releasing the Debtors' bankruptcy estates from Prudential's secured or unsecured claims as provided in paragraphs 5 and 6 hereof) and anyone claiming by or through them, their respective past, present and future partners, owners, managers, directors, officers, subsidiaries, affiliates, principals, agents, employees, partnerships, shareholders, members, administrators, representatives, beneficiaries, predecessors, joint venturers, independent contractors, servants, professionals, contractors, trustees, successors, assigns, insurers, heirs, and attorneys) do hereby fully, absolutely, and irrevocably release, remise, acquit and forever discharge one another and their respective predecessors, subsidiaries, successors, assigns and affiliates, and their current and former partners, owners, managers, directors, officers, principals, agents, employees, partnerships, shareholders, members, administrators, representatives, beneficiaries, joint venturers, independent contractors, servants, professionals, contractors, trustees, insurers, heirs, and attorneys (including MDMC, Mitts, and Obermayer Rebmann Maxwell & Hippel LLP) and all, partners, owners, managers, directors, officers, principals, agents, employees, partnerships, shareholders, members, administrators, representatives, beneficiaries, predecessors, joint venturers, independent contractors, servants, professionals, contractors, trustees, successors, assigns, insurers, heirs, and attorneys of any of them, in any capacity whatsoever, from any and all manner of actions, causes of action, suits, debts, accounts, contracts, agreements,

controversies, judgments, damages, claims, liabilities, security interests and demands of any nature whatsoever, whether known or unknown, contingent or matured, direct or indirect, in law or in equity, asserted or which might have been asserted, which the Parties or any of them ever had, now have or hereafter shall or may have against one another for, upon or by reason of any act, transaction, practice, conduct, matter, cause or thing of any kind whatsoever that arose or occurred on or prior to the date of this Settlement, whether or not now known, relating to: (i) all claims alleged in (a) the Calnshire Adversary, (b) the Steeple Adversary, (c) any actual or potential claims in the nature of a claim for sanctions under 9011 or otherwise as provided in the 9011 Notices, (d) all counterclaims filed by Calnshire in the Calnshire Foreclosure, (e) all counterclaims filed by Steeple in the Steeple Foreclosure; and (ii) any claim the Trustee, on behalf of the bankruptcy estates of Calnshire and Steeple, had or may have against Prudential, and any claim Prudential had or may have against the Trustee or the Debtors' bankruptcy estates in connection with (a) the Calnshire Claim, (b) the Steeple Claim, (c) the Steeple Note and any modification thereto, (d) the Steeple Mortgage and any modification thereto, (e) the Steeple Loan, any modifications thereto and any other loan documents associated with the Steeple Loan, (f) the Calnshire Mortgage and any modification thereto as well as any other mortgage given to Prudential by Calnshire, (g) the Durham Note and any modification thereto, and (h) the Durham Loan and any modification thereto, including, but not limited to, the Durham Modifications or any other agreement associated with the Durham Loan or Durham Loan Documents (the "Releases").

8.  **Effect and Exceptions to Releases.** The Releases set forth in paragraph seven (7) above shall not release, discharge, satisfy or relieve the Parties of their respective obligations pursuant to this Settlement or operate as a release of any or all manner of actions, causes of

action, suits, debts, accounts, contracts, agreements, controversies, judgments, damages, claims, liabilities, security interests and demands of any nature whatsoever, whether known or unknown, contingent or matured, direct or indirect, in law or in equity, asserted or which might have been asserted, in connection with any of the following:

  a. Any claim or defense Prudential or Trustee has against Renato Gualtieri in any capacity or any other individual or entity who may be liable along with the Debtors including but not limited to Island View;

  b. Any claim Prudential has against the Debtors under the Loan Documents, giving rise to the Claims for purposes of the foreclosures and any deficiencies arising out of any sheriff's sale of the Calnshire Property or the Steeple Property which deficiencies are provided for in paragraph 6 hereof;

  c. Any claim or defense Prudential or Trustee has in connection with any other transactions with Gualtieri, or any of his affiliates, companies, subsidiaries, partnerships, joint venturers, independent contractors, estates, trustees, guarantors or any of their successors or assigns;

  d. Any claim Prudential or Trustee has in connection with any other transactions with Gualtieri, including, but not limited to, any loans, collateral mortgages, guaranties, borrowings, assignments, agreements, notes, security agreements, cross-collateralization rights or other contract;

  e. Any of Prudential's or the Trustee's defenses to any claims against either of them held and/or alleged in any way by (i) Renato Gualtieri in his capacity as an individual or as principal of the Debtors or (ii) any of his affiliates, companies, subsidiaries, partnerships, joint venturers, independent contractors, estates or any of

their trustees, successors or assigns in connection with any loans, collateral mortgages, guarantees, borrowings, assignments, agreements, notes, security agreements or other contract;

  f. Any of Prudential's rights retained to complete the Calnshire Foreclosure and the Steeple Foreclosure; and

  g. Any claim or defense that the Trustee has against Renato Gualtieri, Island View and any of their affiliates, companies, subsidiaries, partnerships, joint venturers, independent contractors, estates, trustees, guarantors or any of their successors or assigns.

None of the exceptions to the release described in this paragraph 8 shall have or be deemed to have any adverse effect upon or, in any manner, reduce, restrict, eliminate or limit or be deemed to reduce, restrict, eliminate or limit, the Parties' ability to enforce the Settlement or the scope or effect of the release granted in paragraph 7 to and for the benefit of the Trustee, individually and in her capacity as Chapter 7 Trustee of the bankruptcy estates of Calnshire and Steeple, the Debtors' bankruptcy estates and MDMC and Mitts all as described in paragraph 7.

  9. <u>Continued Cooperation</u>. The Parties further agree that they will fully cooperate with each other and shall further take any and all actions which are reasonably necessary to effectuate the terms of this Settlement, and shall execute and/or file, or consent to the filing of, any and all documents reasonably necessary to facilitate this Settlement, the Calnshire Foreclosure, the Steeple Foreclosure, the sheriff's sales of the Calnshire Property and the Steeple Property and/or pursuit of any deficiency.

  10. <u>Non-Interference</u>. The Parties further agrees that they shall not take any action inconsistent with this Settlement or to either induce or assist any person or entity in the assertion

of any claims of any nature against either Prudential or the Trustee. The Trustee shall further not take any action to prevent or impede Prudential from proceeding on, obtaining, entering and/or executing upon judgments in the Calnshire Foreclosure or the Steeple Foreclosure or to prevent the Calnshire Property and Steeple Property from proceeding to and being sold at sheriff sale. Nor shall the Parties seek reconsideration, appeal or annulment of such consent judgments entered in the Calnshire Foreclosure and/or the Steeple Foreclosure, any Bankruptcy Court Order approving this Settlement, the prior consent orders listed in Paragraph 4 above, or this Settlement.

11. <u>Bankruptcy Court Approval</u>. This Settlement is binding upon the Parties, and shall be subject to the entry of a final orders of the Bankruptcy Court approving this Settlement.

12. <u>No Reliance</u>. Each of the Parties hereto represents, warrants and agrees that in executing and entering in to this Settlement, such Party: (i) has been represented by legal counsel, has reviewed this Settlement with such counsel, and fully understands the binding legal effect of this Settlement; and (ii) is not relying and has not relied upon any representation, promise or statement made by anyone which is not specifically recited, contained or embodied in this Settlement.

13. <u>Predecessors, Successors and Assigns</u>. This Settlement shall be binding upon and inure to the benefit of the Parties hereto and their heirs, executors, administrators, predecessors, trustees, successors, and assigns, as well as parties being released under Paragraph 7 hereof.

14. <u>Authorization</u>. The Parties hereto represent and warrant that each of them is authorized and of full capacity to make, execute and deliver this Settlement, subject to Bankruptcy Court approval as to the Trustee. Each person signing this Settlement on behalf of a Party acknowledges, warrants and represents that (i) this Settlement is legal, valid and binding

and enforceable in accordance with its terms against such Party hereto; (ii) each such Party or person has all requisite legal, partnership, corporate or other applicable authority to execute and deliver this Settlement and any other documents or agreements required hereunder, and each of them has all requisite legal, partnership, corporate or other applicable authority to act on behalf of the Party for which each is signing and to bind such Party to the terms and conditions of this Settlement; (iii) each such Party or person has obtained any approvals or consents and taken any partnership, corporate or other applicable actions that are necessary for the authorization, execution, delivery and performance of this Settlement, other than as specified herein; and (iv) this Settlement and the payments as set forth in this Settlement do not violate any other contractual obligations of the Parties to any third party. Notwithstanding any other provision of this Settlement, the representations and warranties set forth in this paragraph shall survive the completion of this Settlement.

15. <u>Integration and Modification</u>. This Settlement and the obligations set forth herein and in the Order approving the Settlement constitute and are intended to constitute the entire agreement of the Parties concerning the releases and other obligations which are the subject matter hereof. No covenants, agreements, representations or warranties of any kind whatsoever have been made by any Party hereto, except as specifically set forth herein. With the exception of the prior agreements incorporated herein in Paragraph 4 above, all prior discussions and negotiations with respect to the releases which are the subject matter hereof are superseded by this Settlement. No subsequent alteration, amendment, change, modification or addition to this Settlement shall be binding unless reduced to writing and signed by the Parties hereto.

16. <u>Choice of Law</u>. The Parties agree that this Settlement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania and applicable

provisions of Title 11 of the United States Code and the Bankruptcy Court shall retain jurisdiction to determine any disputes arising out of this Settlement.

17. <u>Use of Settlement</u>.    Any Party may file this Settlement along with the Final Order approving this Settlement in any action that may be brought against them in order to support a defense or counterclaim based on principles of full faith and credit, release, a good faith settlement, bar or reduction or any other theory of the claim preclusion or issue preclusion or similar defense or counterclaim.

18. <u>Counterparts; Telecopy Signatures</u>.    This Settlement may be executed in one or more counterparts, each of which shall be deemed an original for all purposes, and all of which taken together shall constitute one and the same instrument.  The delivery of a telecopy, PDF or facsimile signature by any Party hereto shall have same legally binding effect as the delivery of an original signature.

19. <u>Notices</u>:  Notices under this Settlement shall be given to the Parties at the following addresses (or such other address as a Party may designate in writing), by hand delivery or by certified United States mail, postage prepaid, and shall be effective upon receipt:

|  |  |
|---|---|
| If to Prudential: | OBERMAYER REBMANN MAXWELL & HIPPEL LLP<br>Attn: Edmond M. George, Esquire<br>Centre Square West, Suite 3400<br>1500 Market Street<br>Philadelphia, PA 19102 |
| If to the Trustee: | MCELROY DEUTSCH MULVANEY<br>& CARPENTER, LLP<br>Attn: Barry D. Kleban, Esquire<br>      Gary D. Bressler, Esquire<br>Suite 1500, Suburban Station Building<br>1617 John F. Kennedy Blvd.<br>Philadelphia, PA 19103 |

and

>MITTS LAW, LLC
>Attn: Maurice R. Mitts, Esquire
>1822 Spruce Street
>Philadelphia, PA 19103

20. <u>Headings</u>. The headings set forth in this Settlement are inserted for convenience of reference only and are to be ignored in any construction of the provisions hereof.

21. <u>Further Assurances</u>. From and after the execution hereof, each Party agrees to cooperate with one another in carrying out the terms of this Settlement including but not limited to the execution, with acknowledgement or affidavit if required, of any and all documents that may be reasonably necessary or expedient to effectuate this Settlement and to achieve its purposes.

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]**

Intending to be bound by the terms of this Settlement, we have affixed our signatures below.

| BONNIE B. FINKEL, INDIVIDUALLY AND IN HER CAPACITY AS CHAPTER 7 TRUSTEE OF THE BANKRUPTCY ESTATE OF CALNSHIRE ESTATES, LLC | BONNIE B. FINKEL, INDIVIDUALLY AND IN HER CAPACITY AS CHAPTER 7 TRUSTEE OF THE BANKRUPTCY ESTATE OF STEEPLE RUN, L.P. |
|---|---|
| By: */s/ Bonnie B. Finkel/*<br>By: Bonnie B. Finkel<br>Plaintiff/Trustee | By: */s/ Bonnie B. Finkel/*<br>By: Bonnie B. Finkel<br>Plaintiff/Trustee |
| Dated: 12/5/20 | Dated: 12/5/20 |

PRUDENTIAL BANK

By: */s/ Anthony Migliorino/*
By: Anthony Migliorino
EVP / COO

Dated:

4833-5206-5487                                                                 18